# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MELANIE GODDARD,

      *Plaintiff*,

vs.

ARTISAN EARTHWORKS, LLC,
SMITH & GILL HOLDINGS, LLC,
ANDREW SMITH HOMES LLC, AND
ANDREW SMITH,

      *Defendants.*

Case No.09-2336-EFM

## MEMORANDUM AND ORDER

Plaintiff Melanie Goddard alleges numerous violations of federal law against Defendants Artisan Earthworks, LLC ("Artisan Earthworks"), Smith & Gill Holdings, LLC ("Smith & Gill"), and Andrew Smith Homes, LLC ("Andrew Smith Homes") (collectively, "Defendant Companies"), and alleges slander under Kansas law against Defendant Andrew Smith ("Smith").[1] In her Complaint, Plaintiff claims that she was suspended and later terminated because she filed a police report indicating that another employee of Defendant Companies, Jamie Howard, had made criminal threats against her, her family, and her property. Thereafter, police officers came to Defendant Companies' offices to inquire about the alleged threats. Plaintiff claims that as a result of making

---

[1] Andrew Smith is the president of Andrew Smith Homes, LLC; Plaintiff also alleges Andrew Smith is in some manner involved in the corporate hierarchy of Artisan Earthworks, LLC, and Smith & Gill Holdings, LLC.

this report, she was suspended from work for the remainder of the week and was terminated the following week.

Plaintiff alleges that Defendant Companies violated the Equal Pay Act ("EPA")[2] by paying her at a lower rate than that of a male coworker. In addition, Plaintiff claims that Defendant Companies retaliated against her, in violation of Title VII,[3] for reporting the alleged employee threats to the police and for refusing to disclose to them bids placed by her brother's construction business.[4] Finally, Plaintiff alleges discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"),[5] claiming that Defendant Companies required her to obtain a license to drive a commercial vehicle. Plaintiff claims that because she was 49 years old and had back problems, she had no desire to drive such a vehicle. In addition to the foregoing, Plaintiff alleges Defendant Andrew Smith defamed her by giving false information to potential employers that prevented her from receiving employment after leaving Defendant Companies.

Defendants Smith & Gill, Andrew Smith Homes, and Andrew Smith, now move to dismiss each of Plaintiff's claims for failure to state a claim upon which relief can be granted.[6] Defendants also move to dismiss Plaintiff's Title VII claims for lack of subject matter jurisdiction. In her

---

[2]29 U.S.C. § 206(d).

[3]42 U.S.C. § 2000e-3.

[4]It is unclear how this fact is related to Plaintiff's retaliation claims. Plaintiff does not provide any background facts or any other detail as to how her brother's business is related to this case, much less how she was allegedly retaliated against for not disclosing bids from her brother's business.

[5]29 U.S.C. § 621 *et seq*.

[6]Defendant Artisan Earthworks, LLC does not join in this motion.

response, Plaintiff seeks leave to amend her complaint to correct any deficiencies, but Defendants suggest such amendments would be futile.[7]

## ANALYSIS

### *I. Standard of Review*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[8]  "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[9]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[10] In determining whether a claim is facially plausible, the court must draw on its judicial experience and common sense.[11]  All well pleaded facts in the Complaint are assumed to be true and are viewed

---

[7]Plaintiff improperly sought Leave to Amend her Complaint in her Response rather than making the appropriate motion in accordance with D. Kan. Rule 15.1. Therefore, the Court has no motion before it to grant such relief. Nonetheless, the Court has reviewed the parties argument with regard to amending the Complaint, and concludes that even if Plaintiff had filed the proper motion, her request would to amend would be futile.

[8]*Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[9]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[10]*Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).

[11]*Iqbal*, 129 S.Ct. at 1950.

in the light most favorable to the plaintiff.[12] Allegations that merely state legal conclusions, however, need not be accepted as true.[13]

## *II. Racial and Sexual Discrimination*

Plaintiff alleges that Defendant Companies discriminated against her and terminated her due to both her race and sex in violation of 42 U.S.C. § 1983. "To state a claim under 42 U.S.C. § 1983 a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[14] A person acts under color of state law for purposes of Section 1983 when the person exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."[15] However, a person need not be an officer of the State; it is enough that he is a willful participant in State action or participant in an action with an agent of the State.[16] Further, a private person may act under color of state law if he or she is exercising powers "traditionally exclusively reserved to the state."[17]

In her Response, Plaintiff appears to concede that she has no valid claim under 42 U.S.C. § 1983, and requests leave of the Court to amend the Complaint to bring her race discrimination claim

---

[12] *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).

[13] *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[14] 42 U.S.C. § 1983*; see also Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988).

[15] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941); Accord. *Monroe v. Pape*, 365 U.S. 167, 187 (1961) (adopting *Classic* standard for purposes of § 1983) (overruled in part on other grounds, *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 695-701 (1978).

[16] *See Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).

[17] *Warner v. Grand County*, 57 F.3d 962, 964 (10th Cir. 1995) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974).

pursuant to Section 1981 rather than Section 1983.[18] Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment . . . ."[19] Defendants, however, contend that allowing Plaintiff to amend her Complaint would be futile, as Plaintiff has failed to allege in the Amended Complaint sufficient facts that would entitle her to relief for race discrimination under either Section 1981 or Title VII. As discussed below, the Court agrees that Plaintiff's proposed Amended Complaint suffers from the same deficiencies as her initial Complaint, and thus, concludes that her proposed amendment would be futile.[20] Therefore, the Court grants Defendants' Motion to Dismiss Plaintiff's claims brought pursuant to 42 U.S.C. § 1983, and would deny Plaintiff's request to amend her Complaint for this claim.

### *III. Title VII discrimination*

Plaintiff alleges that Defendant Companies discriminated against her and subsequently terminated her due to her gender in violation of Title VII.[21] Defendant Companies contend that Plaintiff has failed to allege that either Defendant is an "employer" for Title VII purposes, and thus, this Court lacks jurisdiction over this claim. Under Title VII, an "employer" is defined as a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day

---

[18]Plaintiff also alleges racial discrimination pursuant to Title VII.

[19]42 U.S.C. § 1981(a).

[20]*See Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992) (A district court may deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss or otherwise fails to state a claim). The framework developed in Title VII cases is applied to claims brought under 42 U.S.C. § 1981, and therefore, the Court need not analyze these statues separately. *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 617 n.1 (1999).

[21]42 U.S.C. § 2000e *et seq.*

in each of twenty or more calendar weeks in the current or preceding calendar year. . . ."[22] Defendant Companies argue that Plaintiff's Complaint fails to allege that either Defendant employed the requisite number of employees. In support, they provide the affidavit of Defendant Smith, who states that at no time did Defendant Companies employ the requisite number of employees to permit the Court's jurisdiction under Title VII. Plaintiff, however, asserts that Defendant Smith is not being honest in his affidavit, and in response, submits her own supporting affidavits from herself and other employees in which each state that each of Defendant Companies employed at least fifteen employees. Thus, Plaintiff claims this Court has jurisdiction over her claim. Where, as here, there are competing affidavits, Plaintiff is entitled to any factual doubts, and accordingly, we resolve these factual disputes in Plaintiff's favor.[23]

In addition to the aforementioned affidavits, documents accompanying Plaintiff's Complaint, which the Court considers part of the Complaint itself,[24] claim that Smith & Gill employs fifty employees.[25] Therefore, based on this assertion, Plaintiff has at this stage sufficiently alleged that this company employs more than enough employees to subject it to Title VII.[26] Defendants' argument that this Court lacks subject matter jurisdiction because the companies do not meet the definition of employer under Section 2000e(b) of Title VII is, therefore, unpersuasive.

---

[22] 42 U.S.C. § 2000e(b).

[23] *See Traffas v. Bridge Capital Corp.*, 1990 WL 251740, at *3 (D. Kan. Dec. 3, 1990) (citing *Ammon v. Kaplow*, 468 F. Supp. 1304, 1309 (D. Kan. 1979)).

[24] Fed. R. Civ. P. 10(c); *see also Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("[A] court may look both to the complaint itself and to any documents attached as exhibits to the complaint."); *Bellmon*, 935 F.2d at 1112 ("A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal.") (citing cases).

[25] Doc. 1, Exh. B (Defendant Andrew Smith Homes, LLC is named in the EEOC complaint, but the number of employees it employs is not indicated.).

[26] 42 U.S.C. § 2000e.

**A. Gender discrimination**

In the absence of direct evidence of discrimination, the Court analyzes a Title VII gender discrimination claim using the three part framework created in *McDonnell Douglas Corp. v. Green*.[27] Under this structure, Plaintiff must establish: (1) that she was a member of a protected class; (2) that she was qualified for and satisfactorily performed her job; and (3) that the circumstances in the case give rise to an inference of discrimination.[28]

Although Plaintiff does not allege that she was satisfactorily performing her job, she does allege that she was qualified for her job and furthering her qualifications by training for her position with her brother and co-worker, Mitch Jurgeson. Plaintiff also alleges that she attended training in Arizona for estimating software. Defendants have not asserted that she was not qualified for her job or that she was terminated because she lacked such qualification. Plaintiff was hired by Andrew Smith on September 17, 2007 and continued to work for nine months, and in fact, received at least one promotion to a management level position. The Court must therefore assume, absent evidence or an assertion to the contrary, that Defendant Companies would not have hired Plaintiff, trained her, promoted her, or retained her had she not been qualified to perform the positions she held.

The *prima facie* case, while not meant to be a heavy burden, does require Plaintiff to plead facts sufficient to state a plausible theory of recovery to survive a Rule 12(b)(6) motion to dismiss. Plaintiff, however, fails to meet even this minimal burden. Plaintiff makes no reference to any actions, including discrimination or termination, taken against her by any Defendant on the basis of her gender. While Plaintiff's Complaint indicates that she is a female, she only alleges that she had

---

[27] 411 U.S. 792 (1973).

[28] 42 U.S.C. 2000e-2; *Salguero v. City of Clovis*, 366 F.3d 1168, 1174 (10th Cir. 2004).

a dispute with a male colleague that resulted in her making a report with law enforcement. She further alleges she was suspended and subsequently terminated as a result of making that report and that the colleague, who happened to be male, was not terminated. Plaintiff fails to allege any facts that her suspension and termination was based on her gender. Thus, Plaintiff fails to present any facts that give rise to an inference that her employer's motive for terminating her was discrimination based on her sex. Therefore, Defendants' Motion to Dismiss these claims is granted.

Similar to her initial Complaint, Plaintiff's proposed Amended Complaint fails to allege that her suspension and termination were due to her gender or exacted with a discriminatory motive, an essential element of a gender discrimination claim. The Court concludes that allowing Plaintiff to amend based upon her proposed Amended Complaint would be futile.

**B. Racial discrimination**

Plaintiff further alleges that her suspension and termination was the result of Defendant companies discriminating on the basis of her race. To show that a plaintiff has been terminated because of her race under Title VII, a plaintiff must normally show that: (1) she is a member of a protected class or racial minority; (2) she was qualified for her job; (3) despite her qualifications, she was terminated; and (4) the job was not eliminated after her discharge.[29] Because Plaintiff is Caucasian, the Court reviews her allegations under the reverse racial discrimination standard.[30] Under this standard, rather than showing that she is a member of a protected class or racial minority,

---

[29] *Kendrick*, 220 F.3d at 1229; *see also Lowe v. Angelo's Italian Foods, Inc.*, 97 F.3d 1170, 1174-75 (10th Cir. 1996) (proof of fourth prong may be that position remained available).

[30] *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992).

Plaintiff must offer background facts "that support an inference that the defendant is one of those unusual employers who discriminates against the majority."[31]

Here, Plaintiff's only allegations tending to show that either of Defendant Companies is an employer who discriminates against the majority is an alleged incident concerning a text message conversation between Defendant Andrew Smith and Rocky Smith, one of Plaintiff's colleagues, in which Defendant Smith eluded to possibly needing to hire "illegal" Mexican workers. In this text conversation, Defendant Smith stated that he "might have to go Mexican," which Plaintiff seems to suggest is in indication of Defendant Smith's intent to terminate Plaintiff and her white colleagues, and thereafter, replace them with "illegal" Mexican workers. Plaintiff makes a second allegation that Defendant Companies may have previously hired Mexican employees.[32] However, while Plaintiff alleges that Defendant Companies may have hired illegal Mexican workers, Plaintiff never alleges that any of Defendant Companies hired any illegal Mexican workers for positions previously held by Caucasians. Because she fails to allege such facts, she fails to provide background information necessary to create an inference that Defendant Companies belong in the category of employers that traditionally discriminate against the majority. Furthermore, Plaintiff does not offer any facts to show her job was not eliminated, or that after she was terminated, Defendant Companies hired anyone to fill her position, let alone someone of another race. Because Plaintiff's Complaint fails to allege sufficient facts to raise a discriminatory inference, it fails to show a level of plausibility required to defeat a Rule 12(b)(6) motion to dismiss. Therefore, the Court concludes that Plaintiff's Complaint lacks sufficient factual allegations to state a claim for

---

[31] *Id*.

[32] Doc. 1, Page 7, ¶ 18.

which relief may be granted for gender and racial discrimination under 42 U.S.C. § 2000e-2(a). The Court further concludes that Plaintiff's proposed Amended Complaint suffers from the same deficiencies as her original Complaint in that it fails to add any additional factual allegations that would push this allegation across the plausibility line. Defendants' Motion to Dismiss Plaintiff's race-based discrimination claim is granted.

### *IV. Hostile work environment*

Plaintiff alleges that Defendant Companies fostered or encouraged a hostile work environment in violation of Title VII. Though unclear, Plaintiff appears to be alleging in Counts II and III of her Complaint a racially hostile work environment. To rise to the level of being a hostile work environment, the alleged harassment must be so severe and pervasive that it alters the terms, conditions, or privileges of employment.[33] The severity and pervasiveness of the harassment is evaluated by looking at the totality of the circumstances.[34]

In the case of a racially hostile work environment, the showing of pervasiveness must be "more than a few instances of racial enmity."[35] Additionally, a plaintiff must be able to show that the workplace was so "permeated with discriminatory intimidation, ridicule, and insult . . . sufficiently severe and pervasive to . . . create an abusive working environment."[36] Here, Plaintiff fails to allege that she was harassed, discriminated against, intimidated, or in any other way

---

[33]*Chavez v. N.M.*, 397 F.3d 826, 832-833 (10th Cir. 2005).

[34]*Id*.

[35]*Bloomer v. UPS*, 94 Fed. Appx. 820, 825 (10th Cir. 2004) (unpublished) (quoting *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994).

[36]*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (Title VII is not meant to be a general civility code in the workplace, is not meant to eliminate innocuous behavior in the workplace, and not meant to make workplaces asexual or androgynous. Title VII is meant to prevent objectively offensive behavior affecting terms and conditions of employment.).

subjected to abuse because of her race. Plaintiff further fails to allege any history by Defendant Companies of subjecting her or any other employee to negative treatment based on their race. The pleadings are void of factual allegations that show any type of hostile work environment existed. In fact, the only instance of hostility or of a hostile relationship alleged in the Complaint is a dispute that occurred between Plaintiff and Jamie Howard ("Howard"), Plaintiff's co-worker and the father of her grandchild. That dispute resulted in Plaintiff making the police report that allegedly occasioned her suspension and termination. Plaintiff's employment was undoubtedly altered when she was suspended and terminated, but the Court cannot conclude it was due to any racial harassment or animus. Plaintiff cannot simply allege that she was required to work in a racially hostile work environment without at least setting forth some factual allegations to support such a claim.[37] As a result, Defendant Companies' Motion to Dismiss Plaintiff's claims of hostile work environment in violation of Title VII is granted.[38]

### *V. Title VII Retaliation*

Plaintiff alleges that Defendant Companies suspended and terminated her in retaliation for her making a police report against Howard and for refusing to disclose bids placed by her brother's competing construction business. Retaliation under Title VII requires that a plaintiff allege that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is

---

[37] *See Hall*, 935 F.2d at 1110 (conclusory allegations without sufficient facts asserted to back up the allegation need not be deemed true).

[38] Plaintiff's proposed Amended Complaint is also void of any allegation that Defendant Companies encouraged, fostered, or tolerated severe or pervasive racially discriminatory intimidation, insult, or ridicule, thereby making any amendment based on the Amended Complaint futile.

a causal connection between the exercise of protected activity and the adverse action.[39] Protected activity for purposes of Title VII retaliation includes either (1) participating in or initiating a Title VII proceeding or (2) opposing discrimination made unlawful by Title VII.[40] Adverse actions are those actions a reasonable employee could find "materially adverse," which in the context of retaliation, means an action that "might well dissuade a reasonable worker from making or supporting a [protected claim]."[41] Suspension and termination are actions that would likely dissuade a reasonable employee from reporting Title VII violations or participating in proceedings. Thus, we conclude that these actions are materially adverse for purposes of Plaintiff's claim.

In this case, Plaintiff has alleged that she was suspended from work and subsequently terminated because she filed a police report detailing Howard's threats.[42] Filing police reports are not typically protected activity under Title VII. However, a police report may be protected under Title VII if the conduct reported to the police concerns conduct that is prohibited by Title VII.[43] Here, Plaintiff's report to the police concerned threats made to her by Howard after Plaintiff's

---

[39]*See* 42 U.S.C. § 2000e-3*; Vaughn v. Epworth Villa*, 537 F.3d 1147, 1150 (10th Cir. 2008) (adverse employment actions, such as suspension, demotion, or termination, while prohibited in retaliation, are no longer the only actions that are considered adverse actions for Title VII retaliation purposes.); *see also Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).

[40]*See Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1381 (10th Cir. 1994) (citing *Daniels v. Loveridge*, 32 F.3d 1472, 1475 (10th Cir. 1994).

[41]*Id.*

[42]Plaintiff also seems to be alleging she was retaliated against for refusing to disclose construction bids placed by her brother's business. This type of activity is clearly not protected under Title VII; the statute only prevents retaliation against employees who exercise rights enumerated within the statute. Keeping her brother's company's bids secret is not included as a protected activity.

[43]*See Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188-1189 (10th Cir. 2002); *Hounton v. Gallup Indep. Co.*, 113 Fed. Appx. 329, 333-334 (10th Cir. 2004) (unpublished) (police report may be protected activity if the report contains anything about discriminatory activity); *Worth v. Tyler*, 276 F.3d 249, 265 (7th Cir. 2001) ("plaintiff that reports such conduct to the police clearly 'opposes' it within the meaning of 42 U.S.C. § 2000e-3(a).").

daughter gave birth.[44] Thus, the incident Plaintiff reported to the police did not concern conduct that is prohibited by Title VII, and as a result, is not recognized as protected activity under Title VII. Defendant Companies' Motion to Dismiss Plaintiff's Title VII retaliation claims is granted.

As with Plaintiff's other proposed amendments to her Complaint, the Court finds that an amendment to this claim based on the factual allegations in her proposed Amended Complaint would be futile. Plaintiff fails to allege that she engaged in any protected activity before she was terminated, and therefore, she cannot establish a nexus between the materially adverse action she suffered, i.e., suspension and termination, to any protected activity, which is fatal to her claim.[45] We recognize that in Counts IV and V Plaintiff does allege in conclusory fashion that she was terminated for protecting herself and for reporting racial harassment and discrimination. While reporting racial harassment and discrimination is protected activity, Plaintiff fails to provide any factual allegations indicating the conduct she reported, when the discriminatory conduct took place, or to who she reported such conduct. The bare assertion that Plaintiff made these reports is simply insufficient.[46] Plaintiff must assert sufficient allegations "to state a claim to relief that is plausible on its face," which she has failed to do both in her initial Complaint and in her proposed Amended Complaint.[47]

---

[44]Although not entirely clear from Plaintiff's Complaint or proposed Amended Complaint, it appears that Howard is or was in a relationship with Plaintiff's daughter, and Plaintiff's assertions elude to Howard being the father of Plaintiff's grandchild.

[45]*See Young v. Dillon Cos.*, 468 F.3d 1243, 1253 (10th Cir. 2006).

[46]*See Mobley v. Dillon Cos., Inc.*, 1998 WL 314589 *2 (10th Cir. May 29, 1998) ("A plaintiff's personal beliefs are insufficient to state a Title VII claim."); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1976) ("Conclusory allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act."); *Powell v. Workmen's Comp. Bd.*, 327 F.2d 131, 137 (2nd Cir. 1964) (The plaintiff must "allege with at least some degree of particularity over acts which defendants engaged in" that support each violation alleged.)

[47]*Twombly*, 550 U.S. at 570.

*VI. Age discrimination*

Plaintiff also alleges she was terminated in violation of the Age Discrimination in Employment Act ("ADEA") of 1967.[48] Although it is not entirely clear from Plaintiff's Complaint, it appears she is alleging that because she is over the age of 40, and because Defendant Companies required her to obtain a license to drive a commercial motor vehicle when she did not want to drive such a vehicle, Defendant Companies discriminated against her based on her age. Defendant Companies, however, fail to address Plaintiff's claim under the ADEA. Instead, they address the Americans with Disabilities Act ("ADA"),[49] but only with respect to jurisdiction. However, Plaintiff alleges no violations under the ADA in this case, but does allege an ADEA violation.[50] The ADEA and ADA are distinct and separate acts with different standards and elements required for bringing a claim. Therefore, because Defendant Companies have not proffered any argument as to why Plaintiff's claim under the ADEA should be dismissed, Plaintiff's ADEA claim survives Defendant Companies Motion to Dismiss.

*VII. Equal pay*

Plaintiff alleges that Defendants discriminated against her in violation of the Equal Pay Act ("EPA")[51] by paying her less than Howard, a male counterpart. Plaintiff further alleges she received lower pay in retaliation for filing the above mentioned police report and for not disclosing bids her

---

[48] 29 U.S.C. § 621 *et seq*.

[49] 42 U.S.C. § 12101 *et seq*.

[50] The Court notes that Defendants' counsel is representing Defendants in two other cases pending before this Court, Case Numbers 09-225 and 09-2337, that involve claims brought under the ADA. While Plaintiff's counsel in this case is also representing the plaintiffs in those pending cases, this Plaintiff, Melanie Goddard, is not a plaintiff in those cases.

[51] 29 U.S.C. § 206.

brother's construction company placed. As evidence of the disparate pay, Plaintiff alleges that she did more work than Howard, performed work similar to his, and was paid substantially less per hour than he was paid. Defendant Companies argue that Howard had additional job responsibilities, qualifications, and experience that Plaintiff did not, and therefore, Howard's higher rate of pay was justified. Defendants also argue that, because Howard is a salaried employee and Plaintiff was paid hourly, the disparity between Plaintiff's and Howard's rate of pay on an hourly scale is not comparable. These arguments, however, are more appropriate for consideration on summary judgment rather than in this Motion to Dismiss, where only the pleadings are under consideration.

The EPA prohibits employers subject to the statute from discriminating in amount of pay between members of the opposite sex for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."[52] The anti-retaliation provision of the EPA makes it unlawful for any person "to discharge or in any other manner discriminate against an employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding . . . ."[53] In light of the pleadings, viewed in a light most favorable to Plaintiff, the facts alleged present at least a colorable argument that there was some disparity in pay between employees. Plaintiff, a female, compares her job responsibilities with that of a male employee, alleging that she does more work than Howard, that she and Howard do the same type of work, and she is paid substantially less than him.

---

[52] 29 U.S.C. § 206(d)(1).

[53] 29 U.S.C. § 215(a)(3) (emphasis added) (The chapter referenced in this provision is the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, of which the Equal Pay Act is a part.).

Plaintiff has alleged a plausible theory of which relief could be granted as to her disparate pay. The role of the Court at this juncture is not to weigh the merits of Plaintiff's claim, but to determine whether Plaintiff alleges a plausible theory of relief under the EPA. Here, Plaintiff alleges at least a plausible theory. Because Defendant Companies' motion fails to address Plaintiff's allegations of retaliation in violation of the EPA, Plaintiff's EPA retaliation claim survives as unchallenged. Therefore, the Court denies Defendant Companies' Motion to Dismiss Plaintiff's EPA claims.

### *VIII. Slander*

Defendant Andrew Smith moves the Court to dismiss Plaintiff's slander claim. Defendant Smith generally denies making any false or defamatory statements, and further claims that the facts surrounding a potential slander claim are not sufficiently related to the federal claims in his case to warrant the Court exercising supplemental jurisdiction. District courts may exercise supplemental jurisdiction over state law claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."[54] A claim is part of the same constitutional case or controversy when it arises out of a common nucleus of operative facts.[55] Courts may also, in their discretion, not exercise jurisdiction over state law claims when the state law issues are novel or complex.[56] Tort law, however, is not generally considered to be novel or complex.[57]

---

[54] 28 U.S.C. § 1367(a).

[55] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

[56] 28 U.S.C. § 1367(c).

[57] *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743-44 (11th Cir. 2006).

The elements of a defamation suit under Kansas law are "(1) false and defamatory words (2) communicated to a third person, (3) which results in harm to the person defamed."[58] "Damage to one's reputation is the essence and gravamen of an action for defamation."[59] A plaintiff can only establish a claim for slander by showing damage to her reputation; injury to her personal sensitivities is insufficient.[60] Plaintiff alleges that Smith made false and defamatory statements to third parties, in this case potential employers, which had the effect of limiting, if not prohibiting, her prospects for employment after she was terminated by Defendants.

In his motion, Defendant Smith does not argue that Plaintiff's allegations are insufficient to state a claim, but rather, puts forth a jurisdictional argument that Plaintiff's claim is not sufficiently related to her federal claims. We disagree. Plaintiff was terminated by Defendant Companies, and thereafter, was unable to find employment within the same industry. Plaintiff further alleges Defendant Smith was president of Andrew Smith Homes, and that he was closely tied to the corporate hierarchy of the other Defendant Companies. Plaintiff attributes her inability to find work to comments allegedly made by Defendant Smith to potential employers concerning her performance while in Defendant Companies' employ. Thus, Plaintiff's slander claim is directly tied to her employment with and termination from Defendant Companies. Accordingly, the Court concludes that exercising jurisdiction over Plaintiff's state law claim is appropriate. Defendants' Motion to Dismiss Plaintiff's slander claim is denied.

---

[58]*Droge v. Rempel*, 39 Kan. App. 2d 455, 459, 180 P.3d 1094, 1097 (2008) (quoting *Hall v. Kan.Farm Bureau*, 274 Kan. 263, 276, 50 P.3d 495, 504 (2002)).

[59]*Gobin v. Globe Publ'g Co.*, 232 Kan. 1, 6, 649 P.2d 1239, 1243 (1982).

[60]*Gobin*, 232 Kan. at 7, 649 P.2d at 1244.

## CONCLUSION

Based on the foregoing, Plaintiff's discrimination and hostile work environment claims against Defendants Smith & Gill Holding and Andrew Smith Homes, as alleged in Counts II and III, are dismissed. In addition, Plaintiff's retaliation claims against Defendants Smith & Gill Holding and Andrew Smith Homes, as alleged in Counts V and VI, are dismissed. With respect to Counts VIII and IX, Plaintiff's allegations concerning the EPA survive, but the remaining allegations relating to sex discrimination that do not concern her EPA claim and to allegations relating to harassment or hostile work environment are dismissed.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 8) is hereby GRANTED in part and DENIED in part.

**IT IS SO ORDERED.**

Dated this 1st day of October, 2010.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE